### J. L. PETTILLO, EX PARTE.

*Practice—Default of Purchaser—Re-sale of Land—Surety and Principal.*

1. Where a purchaser fails to pay the note for the purchase money of land sold under a decree, the court will, upon notice, order a resale and charge him with the deficiency, in case the price obtained is not enough to pay what is due on the note. And this, without the concurrence of the delinquent purchaser. *Ex parte Yates*, 6 Jones Eq., 212, modified.

2. A surety upon a note for the purchase money of land sold under a decree of court, has the right, on default of his principal, to require a re-sale in exoneration of his liability.

(*Egerton* v. *Alley*, 6 Ire. Eq., 188 ; *Ferrer* v. *Barrett*, 4 Jones Eq., 455 ; *Walke* v. *Moody*, 65 N. C., 599, cited and approved, and *Ex parte Yates*, 6 Jones Eq., 212, modified.

APPEAL from an Order made at Fall Term, 1878, of HENDERSON Superior Court, by *Avery, J.*

Under a decretal order of the late court of equity made in the year 1859, the lands mentioned in the petition were exposed to sale and purchased by the petitioners John L., Samuel and M. W. Pettillo, at the price of $3,549, and accord-

ing to the conditions of sale they executed their notes for moieties thereof with one Nathan Drake, surety, payable at one and two years with interest from date. The sale was reported and confirmed at the next term, and the purchasers entered into possession. At fall term, 1876, of the superior court to which the cause had been transferred, notice was directed to issue to the purchasers and the surety to appear at the succeeding term and show cause why the residue of the purchase money should not be paid, or a resale ordered. The notice was served on the two living purchasers and the heirs at law of the deceased purchaser. From a report of a referee to the court at spring term, 1878, it appeared that after deducting a payment made in 1863 there was still due for the land the sum of $4,699.20. The purchasers failing to pay this residue or to provide therefor, or to show cause to the contrary, the court ordered a resale on a similar credit of one and two years with interest, and from this order the purchasers appealed.

*Messrs. J. H. Merriman* and *C. M. McLoud,* for petitioners.

SMITH, C. J. (After stating the case.) The only question in the case is this: The surety being dead, and the purchasers after a default of sixteen years, when called on, still failing to pay the residue of the purchase money, can the court direct a re-sale and charge them with the deficiency in case the price obtained is not enough to pay what is due.?

It is the usual practice in making judicial sales, not only to require personal security, but to retain the title until full payment of the purchase money. This double security may by proper orders in the cause, be made available to the parties entitled to the fund, and the land itself as the property of the principal debtor, be advanced to the front rank of liability at the instance of and for the exoneration of the

surety. In case the principal has become insolvent, the surety has an equity to require a re-sale, for his reimbursement if he has paid the debt, and for his protection if he has not; and the equity extends to cases where there are reasonable grounds for apprehending the insolvency and consequent loss to the surety. *Egerton* v. *Alley,* 6 Ire. Eq., 188; *Ferrer* v. *Barrett,* 4 Jones Eq., 455.

No good reason can be assigned why the court, under such circumstances as would entitle the surety to require a resale, may not make the order without coercion alike for the benefit of those to whom the fund belongs and for the relief of the surety himself. Why may not the manifest right of the surety, upon the facts of this case, be acknowledged and acted upon by the court, as well without as by his direct interposition and prompting, and the equities among the parties be fully administered?

The question has been before the courts in this country and in England and is not free from difficulty. We will advert to some of the adjudications on the subject:—

In *Harding* v. *Harding,* 4 Mylne & Craig, 514, in the plaintiff's application for a resale of a part of the land bid off by a defendant who failed to pay the purchase money at the appointed time, Vice Chancellor Shadwell passed an order directing a resale and discharging the purchaser from his contract. The order coming before the Lord Chancellor Cottenham for review, he approved so much of it as directed the sale and remarked: "I think that the order should have been to hold the purchaser to his contract and order the resale in the meantime." Subsequently, after consultation with the other judges, he made the following order: "His Lordship doth order that so much of the order dated the 6th of August, 1838, as directs the defendant, Thomas Haughton Harding, to be discharged from his purchase, in said order mentioned, be discharged, and it is ordered that the rest of the said order be affirmed."

In *Miller* v. *Colyn*, 36 Barb. (N. Y.) 250, the court say: "The remedy against a purchaser who refuses to complete a purchase under a decree or judgment of a court of equity is by an application to the court to compel him to complete it, *or to resell the property and hold him liable for the loss and the additional expenses.* Such an application will be disposed of upon equitable principles, and no doubt facts would be considered which would not be allowed to influence the decision of a suit at law." Then referring to the doubt expressed by Lord ELDON, and to several cases in which the exercise of the power has been maintained, the court proceeds to say: "These cases do not proceed strictly upon the ground of contract, but upon the ground that when a person becomes a purchaser under a decree he submits himself to the jurisdiction of the court, as to all matters connected with the sale or with him in the character of purchaser. *Regina* v. *Rea*, 2 Paige, 399. He may as well be compelled to complete as to relinquish his purchase, and the court by whose order the sale is made must decide in the original suit whether either is equitable and right."

In *Walke* v. *Moody*, 65 N. C., 599, some of the purchase money remaining unpaid, and application being made to subject the land thereto, the court declared " that the plaintiffs have a lien upon the feme plaintiff's share of the land mentioned in the complaint, for the payment of the residue of the purchase money and to *a decree directing a resale* of the feme plaintiff's interest in said land, and the payment of the said debt out of the proceeds thereof, unless the said John M. Moody, or some one on his behalf will come in and pay by a day certain the principal and interest due," &c.

But our attention is called to the ruling in the matter of *Yates*, 6 Jones Eq., 212, in which PEARSON, C. J., defining the remedies where a purchaser at a judicial sale fails to comply with the terms of the bidding, points out one of them in these words: "By an order, without absolutely re-

leasing them from their bid and rescinding the contract, that the land be sold over again, they undertaking as a condition precedent to this order of resale which is made for *their* benefit and on the basis of their liability to a decree for specific performance, &c." This seems to imply the concurrence of the purchasers as necessary to the order for a resale, and if so intended is not in harmony with the authorities cited. The decision is undoubtedly correct in reversing the interlocutory order to resell, made in the court below for the sufficient reason that the first sale had not been confirmed ; and until this was done, the bid was nothing more than an unaccepted proposition to buy, imposing no obligation on the bidder. It is properly held that until the contract is consummated by the action of the court, there is no ground on which the bidder can be charged with the expenses and loss attendant upon a second sale. The order which attempted to do this was consequently declared to be erroneous and set aside. In the unreported case, *Harding* v. *Yarborough*, referred to in the opinion and then depending in the court, a notice was directed to be issued to certain persons who had bid for lands, and after confirmation of the sale, failed to comply with the conditions thereof. The notice, assuming the form of a rule, requires them to complete their purchase or appear at the time specified and show cause why the prayer of the plaintiff should not be granted.

The prayer recited in the notice is, that if the terms of sale are not complied with or good cause shown to the contrary, then the " commissioner may be directed forthwith to resell the hotel and premises, and that all the costs, charges, and incidental expenses attending the last sale and incidental thereto and occasioned by the default " of the purchasers, " *together with any loss or deficiency in price* and interest arising by such second sale may be ascertained by the clerk of this court and the same paid into the office of this court" by said purchasers " for the benefit of the parties interested

in the premises according to their several interests." It appears from the records that the purchasers completed their contract and no further action was had under the rule.

This was an adversary proceeding against delinquent purchasers instituted and conducted, not with their concurrence nor for their benefit, but in the interest of those to whom the fund belonged. It sustains our view of the subject and of the proper practice in such cases. We are therefore of opinion that there is no error in the order directing the resale, but it should be reformed so as to give time for the payment of what remains due on the original sale before the commissioners proceed to sell, according to the practice in the foreclosure of mortgages which we approve in *Mebane* v. *Mebane, ante,* 34.

No error.                              Affirmed.